UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| PHILIP C. TOBIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 07-53-B-W |
| ) | |
| INTERNAL REVENUE SERVICE ) | |
| COMMISSIONER, ) | |
| ) | |
| Defendant. ) | |

**RECOMMENDED DECISION**

Philip Tobin, *pro se*, commenced this action against the Commissioner of the Internal Revenue Service seeking a judicial declaration that certain public service announcements aired by radio stations for state governmental agencies qualify for charitable contribution tax status under the Internal Revenue Code.  He complains that the IRS has refused his request that it issue a ruling on the question and he has filed a motion for judgment (Doc. No. 3) in tandem with his complaint.  The IRS has filed a motion to dismiss, arguing that sovereign immunity bars this suit. (Doc. No. 13.)  Apparently in response to that argument, Tobin has filed a series of motions to amend the complaint to specifically name the Commissioner, to assert a tort claim of business interference and a constitutional claim based on the due process clause (Doc. No. 14), and to add certain Bivens claims against certain agents of the IRS, who are identified by agent number (Doc. Nos. 16 & 17).  I recommend that the Court dismiss the complaint and deny the proposed amendments, which are futile.

**Nature of the Case**

Philip Tobin has been a producer of radio "jingles" between at least 1978 and 1985. (Aff. of Philip C. Tobin, Doc. No. 15-2.) He has sold numerous jingles to state governmental agencies related to various public interests such as snowmobile safety, boating safety, highway safety, ATV safety, and environmental and wildlife conservation. (Id.) A compact disk containing three jingles is available in the file should the Court wish to listen.

In a motion for declaratory judgment filed with his complaint, Tobin explains that he has sought a ruling from the IRS on a tax matter and the IRS has failed to respond to his repeated requests. (Mot. for Decl. J., Doc. No. 3.) The tax matter pertains to Tobin's business of selling jingles. He would like the IRS to issue a ruling that would indicate to radio stations that they could validly claim a deduction for a charitable contribution if they were to provide free airplay to public service jingles on behalf of state and local governments. (Id.) Tobin believes that if radio stations could claim such a deduction they would be willing to broadcast public service announcements for free, and that the lure of free airplay would entice state and local government agencies to purchase his jingles and to request radio stations to provide free airplay as an act of charity. (Id.) According to Tobin, a market for his jingles once existed, but it dried up as a consequence of deregulation of the broadcast industry during the Reagan Administration. (Id.) Evidently, radio stations were once required to afford a certain amount of free air time to the public in order to obtain licensing. (Id.) Tobin believes that the market would recover if radio stations could at least claim a tax deduction for providing free broadcasts. (Id.)

In his complaint Tobin asserts that "the Internal Revenue Service has refused to issue a ruling on the question of whether or not radio airplay dedicated to a state governmental agency in the form of a public service announcement qualifies for charitable-contribution tax status under

the provisions of I.R.S. Tax Bulletin 526." (Compl. ¶ 3.) He seeks a declaratory judgment that the provision of free radio airplay deserves charitable-contribution tax status. (Id.) The Commissioner has responded with a motion to dismiss in which he argues that the Declaratory Judgment Act does not condone claims related to such tax matters. (Mot. to Dismiss, Doc. No. 13.) In addition to opposing the motion, Tobin has filed two motions to amend, the first of which seeks to introduce a first amended complaint against the Commissioner and the second of which seeks to introduce a second amended complaint against certain IRS agents. (Doc. Nos. 13, 16.) He also appears to want to remove the Commissioner from the face of the complaint, though that is not clear; the request may only concern the Bivens claim. (See Doc. No. 17.) It is unclear whether Tobin intends for both of his proposed amended complaints to be active simultaneously, or whether his second amended complaint, which fails to state a claim against the Commissioner, is meant to supplant both the complaint and the first amended complaint. The latter could well be the case. (See Doc. No. 17.) Both of the proposed amended complaints include the same legal claims. The first claim is a Maine law, tortious interference with a business expectancy claim, pursued under the Federal Tort Claims Act. The material allegation in support of this claim is as follows:

> 1. In COUNT ONE: Plaintiff claims Tortious Interference with a Business Expectancy in that defendants made false representations of a material fact when they informed plaintiff without explanation that radio airplay dedicated to the public-service announcements (PSAs) of state governmental agencies did not qualify for charitable-contribution tax deductions under the ambit of Publication 526, CHARITABLE CONTRIBUTIONS.

(First Am. Compl. ¶ 1; see also Sec. Am. Compl. ¶ 1.) The second claim is a Bivens[1] claim concerning "a due-process violation of [Tobin's] Fifth-Amendment liberty interest in freedom of occupation . . . as a result of Defendants' arbitrary denial of charitable-contribution tax status for

---

[1] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 410 (1971).

3

plaintiff's PSAs without a requested hearing."  (First Am. Compl. ¶ 2; see also Sec. Am. Compl. ¶ 2.)

In his motion for declaratory judgment, Tobin indicates that certain IRS representatives, whom he identifies by agent number, advised him that the deduction he has in mind is not authorized because charitable contributions must be in the form of tangible property and not in the form of services.  (Mot. for Decl. J. at 3.)  They evidently made this interpretation based on a reading of IRS Publication 526, which concerns charitable contributions.  The Publication appears to be relevant because the Commissioner appended it in support of the motion to dismiss.  (Doc. No. 13-2.)

**Discussion**

Sovereign immunity bars lawsuits against the federal government except to the extent that Congress has waived that immunity.  Rakes v. United States, 442 F.3d 7, 18 (1st Cir. 2006); McMillen v. United States Dep't of Treasury, 960 F.2d 187, 188 (1st Cir. 1991).  In the absence of a waiver, the court lacks subject matter jurisdiction to entertain claims against the federal government.  Muirhead v. Mecham, 427 F.3d 14, 17 (1st Cir. 2005).

In its motion to dismiss, the Commissioner argues that the case cannot proceed under the Declaratory Judgment Act because that Act does not authorize the courts of the United States to declare the rights of a plaintiff "with respect to federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986."[2]  (Mot. to Dismiss at 4, quoting 28 U.S.C. § 2201(a).)  The Commissioner contends that because no other statute authorizes this suit, it enjoys sovereign immunity with regard to the pending civil action.  (Id.)  In response, Tobin has attempted to amend the complaint to insert tort claims against the Commissioner and certain IRS

---

[2]  Section 7428 authorizes declaratory judgments relating to classification determinations for organizations seeking tax exempt status under the Code.  See 26 U.S.C. § 7428.

agents, as outlined above. The Commissioner objects to the proposed claims on the ground of futility. (Resp. in Opposition to Pl.'s Mot. for Leave, Doc. No. 18.)

**A.     The declaratory judgment claim should be dismissed.**

The solitary declaratory judgment claim set forth in Tobin's complaint should be dismissed because it seeks a declaration in respect to a tax matter and the Declaratory Judgment Act quite clearly does not authorize this Court to make a declaration with respect to federal taxes. 28 U.S.C. § 2201. Tobin contends that his case does not "subsume a tax question" because he really wants to know "whether or not radio airplay is tangible property as opposed to a service." (Pl.'s Mem. in Opposition at 2, Doc. No. 15.) Of course, as Tobin recognizes in the very same paragraph of his memorandum, the only reason his question has any import is because "[a]s a service . . . donated airplay would not qualify for charitable-contribution tax status." (Id.) Tobin's declaratory judgment claim must be dismissed because it is not authorized by the Declaratory Judgment Act and no other jurisdictional hook is evident in the complaint. Sovereign immunity applies, moreover, to claims against the IRS and its employees acting in their official capacities, absent consent on the part of the United States. See, e.g., Krieg v. Mills, 117 F. Supp. 2d 964, 966-67 (N.D. Cal. 2000) (granting motion to dismiss declaratory judgment claim and other claims against IRS agents).

**B.     The motions to amend should be denied because they are futile.**

Tobin seeks to overcome the futility of his initial complaint with certain amended pleadings that would introduce a tort claim subject to the Federal Tort Claims Act (FTCA) and a constitutional claim premised on Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Ordinarily, Tobin would be entitled to amend his complaint at this juncture, as the Commissioner's motion to dismiss is not a responsive pleading and no

5

answer has yet been filed.  See Fed. R. Civ. P. 15; RF Techs. Corp. v. Applied Microwave Techs., Inc., 369 F. Supp. 2d 24, 26 n.2 (D. Me. 2005).  However, "[w]here an amendment would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters."  Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 59 (1st Cir. 1990).  Moreover, because "federal courts are powerless to act in the absence of subject matter jurisdiction," the Court has "an unflagging obligation to notice jurisdictional defects and to pursue them on [its] own initiative."  Espinal-Dominguez v. Puerto Rico, 352 F.3d 490, 495 (1st Cir. 2003).

   When a defendant moves to dismiss an action on the ground that the court lacks jurisdiction over the subject matter, which falls under Rule 12(b)(1), the plaintiff has the burden "clearly to allege facts demonstrating that he is a proper party to invoke federal jurisdiction." Dubois v. United States Dep't of Agric., 102 F.3d 1273, 1281 (1st Cir. 1996) (citation and internal quotation marks omitted); see also Marcello v. Maine, 464 F. Supp. 2d 38, 41 (D. Me. 2006).  "In ruling on a motion to dismiss for lack of subject matter jurisdiction . . . the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff."  Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996).  The court is free to consider extrinsic evidence in reaching its determination, whether that evidence is introduced by the plaintiff or by the defendant.  Marcello, 464 F. Supp. 2d at 41; see also 5A C. Wright & A. Miller, Federal Practice and Procedure § 1350 at 213 (2d ed. 1990).  When the basis for dismissal is the failure of the complaint to state a claim for which relief may be granted, which falls under Rule 12(b)(6), the Court is ordinarily constrained to consider the plaintiff's allegations alone, without regard to extrinsic evidence.  Those allegations are to be regarded as true, reasonable inferences are to be drawn in favor of the plaintiff, and a

dismissal should result only if there is no set of facts that the plaintiff might prove that would justify a recovery on the claim(s) articulated in the complaint.  Roma Constr. Co. v. A Russo, 96 F.3d 566, 568-69 (1st Cir. 1996).  Finally, with respect to either ground for dismissal, Tobin's *pro se* pleadings are to be liberally construed.  Burns v. Town of Lamoine, 43 F. Supp. 2d 63, 68 (D. Me. 1999).

      There are very significant jurisdictional obstacles here due to the applicability of the doctrine of sovereign immunity.  Although the FTCA contains a waiver of sovereign immunity with respect to certain state tort claims against officers of the federal government, the waiver does not extend to "any claim arising in respect of the assessment or collection of any tax or customs duty." 28 U.S.C. § 2680(c).  Tobin alleges tortious interference with his business on the theory that the IRS is interfering with his business by refusing to proclaim that the provision of free airtime to state governmental agencies qualifies for a charitable contribution tax deduction.  Such a claim falls within the ambit of Section 2680(c).  Cf. Am. Ass'n of Commodity Traders v. Dep't of Treasury, 598 F.2d 1233, 1235 (1st Cir. 1979) ("[W]e think a suit seeking damages for the denial of tax-exempt status comes within the ban of section 2680(c)."); see also, cf. McDonald v. Hassard, 89-2 U.S. Tax Cas. (CCH) ¶ 9561, 1989 U.S. Dist. LEXIS 9440, *4 (D. Me. 1989) (Cyr, C.J.) (applying 2680(c) to claims against agents and officers of the IRS in regard to tax liens and collections efforts).  In addition, the FTCA "specifically bars any claim based on an act or omission of a government employee exercising due care in carrying out a regulation and any claim based on the performance of a discretionary function by the agency or employee." Krzyske v. Comm'r, 548 F. Supp. 101, 103 (E.D. Mich. 1982) (citing 28 U.S.C. § 2680(a)).  Controversies about IRS letter rulings quite clearly pertain to the Commissioner's discretionary functions.  Am. Ass'n of Commodity Traders, 598 F.2d at 1235 ("We can think of

7

few more discretionary functions than deciding how and when to issue private letter rulings."). The Court plainly lacks subject matter jurisdiction over Tobin's tort claim because the defendants have immunity. In addition, a tortious interference claim requires proof of interference by fraud or intimidation. Neely v. Bar Harbor Bankshares, 270 F. Supp. 2d 50, 56 (D. Me. 2003). The only relevant conduct that Tobin alleges and that might reasonably be proved consists of the IRS agents' interpretation of an IRS regulation and their refusal to issue a favorable letter ruling, neither of which is on par with an act of fraud or intimidation. The proposed tortious interference claim is futile because the IRS and its agents are not required to issue private letter rulings, Am. Ass'n of Commodity Traders v. Dep't of Treasury, 598 F.2d 1233, 1235 (1st Cir. 1979), and, even if there were a duty to issue a ruling as Tobin has requested, the mere refusal to do so is not an act of fraud or intimidation. There are no reasonable inferences that might fairly be indulged that would warrant a conclusion that Tobin might be able to prove fraud or intimidation in these circumstances. In other words, even if subject matter jurisdiction existed, Tobin fails to state a claim of tortious interference, making this claim equally subject to dismissal on Rule 12(b)(6) grounds.

Turning to Bivens, Tobin alleges that Commissioner Brown and the IRS agents violated his Fifth Amendment "liberty interest in freedom of occupation pursuant to 28 U.S.C. § 1331 as a result of defendant's refusal to respond to plaintiff's request for a ruling letter on the subject of radio airplay." (First Am. Compl. ¶ 2.) "The purpose of Bivens is to deter individual federal officers from committing constitutional violations." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001). Here, Tobin complains of what he describes as the denial of charitable-contribution tax status for his PSAs in the absence of a hearing. As indicated above, there is no right to a private letter ruling from the IRS on a tax matter, Am. Ass'n of Commodity Traders, 598 F.2d at

1235, much less a constitutional right. Moreover, the tax deduction that Tobin espouses would not even be his deduction to take. It would only be available to a radio station, assuming the deduction were available and assuming the station desired to afford free airtime to a governmental entity. It is therefore doubly evident that the denial of the letter ruling that Tobin has requested does not deprive Tobin of any of his rights. Thus, it cannot be said that Tobin has alleged a legitimate constitutional violation or that he will be able to prove any set of facts that would rise to the level of a constitutional deprivation. See Inv. Annuity v. Blumenthal, 609 F.2d 1, 7 (D.C. Cir. 1979) (observing that private letter rulings do not have the force of law and cannot give rise to a deprivation of property cognizable under the Due Process Clause, even if the plaintiff has lost a business as a consequence of a "shift in IRS's interpretation" of the applicable tax law); 26 U.S.C. § 6110(k)(3) (indicating that written determinations have no precedential status); 26 C.F.R. § 601.201(l). Finally, returning to the issue of sovereign immunity, insofar as various remedies exist for taxpayers harmed by *actual* constitutional violations perpetrated by the IRS in connection with matters of taxation, there is no justifiable basis to condone Bivens actions against individual IRS agents based on their conduct in relation to private letter rulings.[3] See McMillen, 960 F.2d at 190-91 (affirming dismissal of Bivens claims against IRS agents who allegedly processed the plaintiff's tax dispute in a negligent fashion, and grounding the dismissal on the absence of subject matter jurisdiction). These several authorities all support the denial of Tobin's motions to amend.

---

[3] It is difficult to infer that the Commissioner was personally involved in the matter of this request for a letter ruling, yet that is what would be required for a Bivens action to proceed against him. *Respondeat superior* has no application in a Bivens action. Gonsalves v. IRS, 791 F. Supp. 19, 21 (D. Me. 1992). Tobin appears to recognize this problem in his "[second] motion to change name of party." (Doc. No. 17.) It is also questionable whether individual IRS agents are responsible for issuing private letter rulings. See 26 C.F.R. § 601.201(a)(2), (3), (5) (describing the officers to whom these responsibilities have been delegated). There is also the matter of qualified immunity, for what IRS agent would reasonably understand that the denial of the requested letter ruling would work a deprivation of a clearly established due process right. See Gonsalves, 791 F. Supp. 2d at 22-23.

**Conclusion**

For the reasons set forth above, I RECOMMEND that the Court GRANT the defendant's motion to dismiss (Doc. No. 13); DENY the plaintiff's motion for declaratory judgment (Doc. No. 3); and DENY the plaintiff's motions to amend or otherwise doctor his complaint (Doc. Nos. 14, 16, 17).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 26, 2007